PAN AMERICAN WORLD AIRWAYS, INC., Plaintiff,

v.

BROTHERHOOD OF RAILWAY AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES, AFL–CIO, C. L. Dennis, individually and as Vice Grand President of the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, AFL–CIO, Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, AFL–CIO, System Board No. 368, Walter T. Coleman and John Le Bright, individually and as General Chairman and Secretary-Treasurer of

Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, AFL–CIO, System Board No. 368, Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, AFL–CIO, Atlantic Division Lodge No. 3055, Henry V. Molle, William Conerty, Constantine Slabowski, and Fred Lawson, individually and as Local Chairman, President, Vice-President and Secretary-Treasurer of Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, AFL–CIO, Atlantic Division Lodge No. 3055, Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, AFL–CIO, Global Wings Lodge No. 3003, David Lynch, John A. Bloor, and Anthony Speranza, individually and as Local Chairman, President and Secretary-Treasurer of Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, AFL–CIO, Global Wings Lodge No. 3003, and all the above named individual defendants as representatives of a class consisting of all of plaintiff's employees in the class or craft of clerical and related employees, Defendants.

Civ. 60–C–622.

United States District Court
E. D. New York.

July 1, 1960.

Poletti & Freidin, New York City, for plaintiff; Jesse Freidin, New York City, of counsel.

Goldberg, Feller & Bredhoff, Washington, D. C., for defendants; David E. Feller, Washington, D. C., of counsel.

BARTELS, District Judge.

Application by plaintiff for a temporary restraining order restraining defendants from engaging in a strike against plaintiff presently scheduled for 12:01 a. m. July 3, 1960.

Plaintiff, Pan American World Airways, Inc. (a New York corporation; hereinafter referred to as "Pan American") is an air carrier as defined in the Federal Aviation Act of 1958, as amended (49 U.S.C.A. § 1301 et seq.). It operates an airline system for the carriage of passengers and property, including mail, in national, overseas and foreign commerce and is a "carrier" within the terms of the Railway Labor Act, as amended (45 U.S.C.A. § 151 et seq.) [hereinafter referred to as "the Act"] and is subject to the provisions thereof. Defendant Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, AFL–CIO

(hereinafter referred to as "the Brotherhood") is a labor union which is the representative, within the meaning of the Act, of Pan American's clerical and related employees. The individual defendants are officers and representatives of the Brotherhood.

It appears from the papers herein that a contract was executed by the parties on November 25, 1958, which continued until December 31, 1959, and was automatically self-renewing unless a notice pursuant to Section 6, Title I of the Act was served thirty days prior to December 31 in any year after 1958; on October 9, 1959 such a notice was served on Pan American by the Brotherhood; negotiations were commenced by the parties and broke down on December 11, 1959; on December 15, 1959 the National Mediation Board informed the parties that it had docketed their dispute, and mediation sessions were begun; on February 5, 1960 the Board informed the parties that its attempts had been unsuccessful and urged arbitration; Pan American agreed but the Brotherhood refused to submit the dispute to arbitration; on February 10, 1960 the Board terminated its services. Thereafter on February 23, 1960 Pan American requested that the next thirty days be spent in negotiation and negotiations were conducted under the auspices of the Board. On March 17 the Brotherhood notified its members that a strike had been set for March 22, 1960. The next day, March 18, 1960, the President of the United States created an Emergency Board (No. 128) to investigate and make recommendations as to the dispute. The Emergency Board conducted investigations and made its findings on June 2, 1960.

From that point on Pan American alleges that the Brotherhood refused to exert every reasonable effort to make an agreement as required by the Act and ceased to bargain in good faith but instead only went through the motions of bargaining while successively increasing its demands. In its answer and opposing affidavits the Brotherhood hotly contests these allegations and alleges that it at all times fulfilled its obligations under the Act. The parties are also in sharp dispute as to whether "off-the-record demands" made to Pan American during the negotiations were in fact demands made by the Brotherhood or simply suggestions made through the Mediation Board as a possible basis for settlement. However, it is stated in the affidavit of Walter T. Coleman, General Chairman of a subordinate unit of the Brotherhood, that " * * * There is no doubt that it will require a larger settlement today to settle this dispute than would have been required in October, 1959, or in March, 1960. * * *"

Pan American also claims that while the Brotherhood waited thirty days following the findings of the Emergency Board made on June 2, 1960, it not only did not bargain during that period but on June 2, 1960 issued a bulletin to its employees advising them, among other things, that they would be free to strike thirty days after June 2nd, the date of the Emergency Board Report, and thus used the thirty days' period as a "heating up" period instead of a "cooling-off" period.

Upon this application it is unnecessary for the Court to pass upon the effect of the statement in the bulletin except to state that it must be construed in context with the bulletin as a whole. It is interesting to note that in this bulletin the Brotherhood admits that "These recommendations of the Board are a basis for us to negotiate in an endeavor to reach a settlement." At present the only function of the Court is to determine from an examination of the papers and the law whether there is a sufficient basis to set the matter down for a hearing upon the preliminary injunction and to issue a temporary restraining order in the interim.

Among the purposes of the Act as stated in Section 2, are "(1) to avoid any interruption to commerce or to the operation of any carrier engaged therein." and "(4) to provide for the prompt and orderly settlement of all disputes con-

cerning rates of pay, rules or working conditions." Section 2, First, of the Act also provides that it shall be the duty of all carriers and employees "to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, * * * ". The questions presented by the pleadings and affidavits is whether the procedures required by the Act must be followed in good faith and whether the parties are required to bargain during the thirty-day "cooling-off" period following the findings of the Emergency Board. In its brief the Brotherhood stated that "There is no requirement in the Railway Labor Act that a Union bargain in good faith." To this the Court cannot agree. If compliance with the Act need only be perfunctory, the congressional mandate would be defeated and the purposes of the Act rendered nugatory. See, American Airlines, Inc. v. Air Line Pilots Ass'n Intern., D.C.N.Y.1958, 169 F.Supp. 777, 793.

What the duties of the parties are during the thirty-day period following the findings of the Emergency Board are not clear. Certainly the *status quo* should be preserved during that period and neither party should act to change the same. It has been said that the purpose of the Board's investigation is to marshal public opinion behind its recommendations. It is argued that there would be no objective in marshaling public opinion behind such recommendations if the parties were not required to bargain in good faith during that thirty-day period. As above indicated, the Brotherhood in its bulletin recognized these recommendations as a basis for negotiations.

Obviously, questions of law and fact are presented by the pleadings and affidavits. Considering the irreparable injury that will undoubtedly result to the general public, the Brotherhood and Pan American if the strike becomes effective on July 3, 1960 as scheduled, the Court believes it is its duty under the above circumstances to issue a restraining order for the relief prayed for, effective until the determination by this Court of Pan American's application for a preliminary injunction in accordance with the formal order issued herewith.